## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

| | |
|---|---|
| INDUSTRIAL SERVICES GROUP, INC., d/b/a/ UNIVERSAL BLASTCO,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOSH DOBSON, *in his official capacity as North Carolina Commissioner of Labor*; and KEVIN BEAUREGARD, *in his official capacity as Director of the Occupational Safety and Health Division of the North Carolina Department of Labor*,<br><br>                    Defendants. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Industrial Services Group, Inc., doing business as Universal Blastco ("ISG"), for its complaint against Defendants Josh Dobson and Kevin Beauregard, respectfully alleges as follows:

### Preliminary Statement

1.      Defendants oversee the administration of North Carolina's OSHA "State Plan" by which the State enforces occupational safety and health standards that apply to most private-sector employers within its borders. Under the federal Occupational Safety and Health ("OSH") Act of 1970 ("OSH Act" or "Act")), the North Carolina State Plan operates subject to the approval and oversight of the federal government, and it must maintain certain minimum standards to continue doing so. But Defendants are currently administering the North Carolina State Plan in violation of the OSH Act, and the Commissioner of Labor has admitted to doing so under oath on at least six separate occasions over the last two years.

2. Specifically, the OSH Act prohibits "us[ing] the results of enforcement activities, such as the number of citations issued or penalties assessed, to evaluate employees directly involved in" the enforcement of occupational safety and health standards. 29 U.S.C. § 657(h). It also prohibits "impos[ing] quotas or goals with regard to the results of such activities." *Id.* The Commissioner of Labor has admitted that the performance of "compliance officers"—who inspect workplaces for hazardous conditions and issue citations for alleged violations—is evaluated based on, among other things, "the number of inspections opened and closed, and the number of citations issued and upheld." This official policy or practice directly violates and is preempted by § 657(h).

3. By operating the North Carolina State Plan in violation of the OSH Act, Defendants lack the legal authority to investigate and enforce occupational safety and health standards. This includes their current investigation and enforcement activities directed at Plaintiff ISG, which conducts business and employs workers in North Carolina, as well as other employers. Defendants' *ultra vires* actions have deprived and continue to deprive ISG of its due process rights under the Fourteenth Amendment. Without this Court's immediate intervention, such deprivation will continue and indeed worsen as Defendants have issued citations to ISG (via compliance officers who are impermissibly incentivized to issue such citations) and will hale it into a State administrative forum despite lacking the authority to do so.

## Jurisdiction, Venue, and Parties

4. This case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343.

5. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to ISG's claims occurred in this District.

7.     ISG is in the business of heavy industry, performing fabrication, installation, repairs, and inspections of industrial equipment on behalf of its customers. ISG is a South Carolina corporation with its principal place of business in Sumter, South Carolina. ISG regularly does business in North Carolina and elsewhere under the trade name "Universal Blastco."

8.     Defendant Josh Dobson is the North Carolina Commissioner of Labor. In that position, Mr. Dobson is the Chief Administrative Officer for the North Carolina Department of Labor, an administrative agency of North Carolina. Mr. Dobson is sued in his official capacity.

9.     Defendant Kevin Beauregard is the Director of the Occupational Safety and Health Division, a division of the North Carolina Department of Labor. Mr. Beauregard is sued in his official capacity.

## Statement of Facts

### The OSH Act and the North Carolina State Plan

10.     The OSH Act established a comprehensive regulatory scheme designed "to assure so far as possible . . .  safe and healthful working conditions" for "every working man and woman in the Nation." 29 U.S.C. § 651(b). The Act created the federal Occupational Safety and Health Administration ("OSHA") and tasked it with administering and enforcing the Act.

11.     The OSH Act also "encourag[ed] the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws." 29 U.S.C. § 651(b)(11). The Act empowers any State to "assume responsibility for development and enforcement . . . of occupational safety and health standards" relating to the same occupational health and safety issues covered by the Act. 29 U.S.C. § 667(b). To assume such responsibility, the State must submit (and OSHA must approve) a "State Plan" that provides standards "at least

3

as effective in providing safe and healthful employment" as those developed by OSHA. 29 U.S.C. § 667(c)(2).

12.     A State Plan must also "provide a program for the enforcement of the State standards which is, or will be, at least as effective as that provided in the Act, and provide assurances that the State's enforcement program will continue to be at least as effective as the Federal program." 29 C.F.R. § 1902.3(d)(1).

13.     After OSHA has approved a State Plan, it must "make a continuing evaluation of the manner in which each State having a plan approved under this section is carrying out such plan." 29 U.S.C. § 667(f). If OSHA determines "that in the administration of the State plan there is a failure to comply substantially with any provision of the State plan (or any assurance contained therein)," it may withdraw its approval, resulting in the plan "ceas[ing] to be in effect." *Id.*

14.     The State of North Carolina currently operates an OSHA-approved State Plan. OSHA granted the North Carolina State Plan initial approval in 1973. It received State Plan Certification in 1976 and final approval in 1996, which was amended twice in 2000. 29 C.F.R. § 1952.5.

15.     The North Carolina State Plan covers most private-sector employers (including Plaintiff ISG) and employees in the State. The North Carolina Department of Labor—and its Occupational Safety and Health Division ("NC OSHA") in particular—administers the North Carolina State Plan and enforces the Plan's occupational safety and health standards.

16.     NC OSHA's "compliance officers" inspect workplaces for hazardous conditions and are to issue citations where violations of occupational safety and health standards have been found.

17.     After the issuance of a citation, and if the employer contests the citation, the North Carolina Occupational Safety and Health Review Commission ("NC OSHRC"), an administrative adjudicatory agency of North Carolina, would adjudicate the dispute.

**The Commissioner Repeatedly Admits To Incentivizing Citation Issuance**

18.     In 1998, Congress amended the OSH Act to add the requirement that "[t]he Secretary shall not use the results of enforcement activities, such as the number of citations issued or penalties assessed, to evaluate employees directly involved in enforcement activities under this chapter or to impose quotas or goals with regard to the results of such activities." 29 U.S.C. § 657(h).

19.     Neither the Occupational Safety and Health Act of North Carolina nor any administrative regulation promulgated under it contains standards similar to those set forth in 29 U.S.C. § 657(h). Thus, the issues addressed by § 657(h) are not covered by the North Carolina State Plan.

20.     The Commissioner of Labor ("Commissioner"), has previously admitted under oath that NC OSHA evaluates its compliance officers' performance based in part on the number of citations they issue.

21.     In NC OSHRC Docket No. OSHANC 2018-6055, the respondent served requests for admission on the Commissioner, to which the Commissioner supplied written, verified responses under oath on March 11, 2019. A true and accurate copy of the relevant portions of the Commissioner's responses (with non-party employer name redacted) are attached as **Exhibit 1**. In that case, the Commissioner responded to certain Requests for Admission as follows:

> a.     Request for Admission 106 stated: "Admit that Complainant's inspectors are eligible to receive a bonus or other monetary compensation based upon

their work for the year." The Commissioner responded: "**ADMITTED, IN THAT COMPLAINANT'S INSPECTORS ARE PAID A SALARY FOR THEIR WORK THROUGHOUT THE YEAR PER THE TERMS OF THEIR CONTRACT.**" Ex. 1.

b. Request for Admission 107 stated: "Admit that the number of citations that an inspector for Complainant issues in a given year affects that inspector's bonus or other monetary compensation for that year." The Commissioner responded: "**ADMITTED, IN THAT COMPLAINANT'S INSPECTORS ARE PAID FOR THEIR WORK, A PART OF WHICH IS THE ISSUANCE OF CITATIONS TO EMPLOYERS VIOLATING THE OSHA STANDARDS. DENIED AS TO ANY IMPLICATION THAT THE NUMBER OF CITATIONS <u>ALONE</u> EFFECTS [sic] AN INSPECTOR'S COMPENSATION.**" *Id.* (underline emphasis added).

c. Request for Admission 110 stated: "Admit that Complainant reviews its inspectors' performance by considering in part the number of citations the inspectors issue to employers in North Carolina in a particular year." The Commissioner responded: "**ADMITTED, IN THAT THE NUMBER OF CITATIONS ISSUED ARE ONE OF A NUMBER OF FACTORS CONSIDERED WHEN REVIEWING COMPLIANCE OFFICER PERFORMANCE.**" Ex. 1.

d. Request for Admission 111 stated: "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina." The

6

Commissioner responded: "**ADMITTED, IN THAT COMPLIANCE OFFICERS ARE <u>INCENTIVIZED</u> TO MAKE UNSAFE WORKPLACES SAFER <u>BY CITING</u> UNSAFE WORK ENVIRONMENTS UNDER THE OCCUPATIONAL SAFETY AND HEALTH STANDARDS PER THE NCDOL-OSHA FIELD OPERATIONS MANUAL (FOM).**" *Id.* (underline emphasis added).

22. In NC OSHRC Docket No. OSHANC 2018-6136, the respondent served requests for admission on the Commissioner, to which the Commissioner supplied written, verified responses under oath on September 16, 2019. A true and accurate copy of the relevant portions of the Commissioner's responses (with non-party employer name redacted) are attached as **Exhibit 2**. In that case, the Commissioner responded to certain Requests for Admission as follows:

a. Request for Admission 24 stated: "Admit that Complainant reviews its inspectors' performance by considering in part the number of citations the inspectors issue to employers in North Carolina in a particular year." After stating several objections, the Commissioner responded: "**Complainant admits that inspectors are provided with performance reviews annually as required by law, which consider factors including, but not limited to, the <u>number of inspections</u> opened and closed, the <u>number of citations issued</u> and upheld, and the quality of writing in the inspector's reports.**" Ex. 2. (underline emphasis added).

b. The Commissioner incorporated the response to Request for Admission 24 in the responses to Requests for Admission 25 and 26. Those requests stated: "Admit that Complainant incentivizes its inspectors to issue citations

7

to employers in North Carolina," and "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina by basing their bonuses or other monetary compensation in part on how many citations they issue to employers," respectively. Ex. 2.

23. In NC OSHRC Docket No. OSHANC 2019-6138, the respondent served requests for admission on the Commissioner, to which the Commissioner supplied written, verified responses under oath on October 22, 2019. A true and accurate copy of the relevant portions of the Commissioner's responses (with non-party employer name redacted) are attached as **Exhibit 3**. In that case, the Commissioner responded to certain Requests for Admission as follows:

    a. Request for Admission 28 stated: "Admit that Complainant's inspectors are eligible to receive a bonus or other monetary compensation based upon their work for the year." After stating several objections, the Commissioner responded: "**Complainant admits that Complainant pays its Occupational Safety and Heath Compliance Officers a salary and that salary may be subject to increases based upon quality of work, as appropriate. Except as admitted, denied.**" Ex. 3.

    b. The Commissioner incorporated the response to Request for Admission 28 in the response to Request for Admission 29. That request stated: "Admit that the number of citations that an inspector for Complainant issues in a given year affects that inspector's bonus or other monetary compensation for that year." Ex. 3.

    c. Request for Admission 32 stated: "Admit that Complainant reviews its inspectors' performance by considering in part the number of citations the

8

inspectors issue to employers in North Carolina in a particular year." After stating several objections and that "**Complainant cannot respond to this request**," the Commissioner responded: "**Complainant does admit that inspectors are reviewed as required by law annually which consider the performance of the inspector including, but not limited to things such as the <u>number of inspections</u> opened and closed, the <u>number of citations issued</u> and upheld, and the quality of writing in the inspector's reports. For any other purpose, subject to the objection earlier raised, this request is denied.**" Ex. 3 (underline emphasis added).

    d. The Commissioner incorporated the response to Request for Admission 32 in the responses to Requests for Admission 33 and 34. Those requests stated: "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina" and "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina by basing their bonuses or other monetary compensation in part on how many citations they issue to employers," respectively. Ex. 3.

24.    In NC OSHRC Docket No. OSHANC 2019-6204, the respondent served requests for admission on the Commissioner, to which the Commissioner supplied written, verified responses under oath on May 21, 2020. A true and accurate copy of the relevant portions of the Commissioner's responses (with non-party employer name redacted) are attached as **Exhibit 4**. In that case, the Commissioner responded to certain Requests for Admission as follows:

    a. Request for Admission 63 stated: "Admit that Complainant's inspectors are eligible to receive a bonus or other monetary compensation based upon their

9

work for the year." After stating several objections, the Commissioner responded: "**Complainant admits that Complainant pays its Occupational Safety and Heath Compliance Officers a salary and that salary may be subject to increases based upon quality of work, as appropriate. Except as admitted, denied.**" Ex. 4.

b. The Commissioner incorporated the response to Request for Admission 63 in the responses to Requests for Admission 64, 68, and 69. Request 64 stated: "Admit that the number of citations that an inspector for Complainant issues in a given year affects that inspector's bonus or other monetary compensation for that year." Request 68 stated: "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina." Request 69 stated: "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina by basing their bonuses or other monetary compensation in part on how many citations they issue to employers." Ex. 4.

c. Request for Admission 67 stated: "Admit that Complainant considers the number of citations that the inspectors issue to employers in North Carolina in a year when it reviews its inspectors' performance." After stating several objections and that "**Complainant cannot respond to this request**," the Commissioner responded: "**Complainant does admit that inspectors are reviewed as required by law annually which consider the performance of the inspector including, but not limited to things such as the <u>number of inspections</u> opened and closed, the <u>number of citations</u> issued and**

10

**upheld, and the quality of writing in the inspector's reports. For any other purpose, subject to the objection earlier raised, this request is denied.**" Ex. 4 (underline emphasis added).

25.     In NC OSRHC Docket No. OSHANC 2020-6283, before the Review Commission, the respondent served requests for admission on the Commissioner, to which the Commissioner supplied written responses on October 8, 2020. A true and accurate copy of the relevant portions of the Commissioner's responses (with non-party employer name redacted) are attached as **Exhibit 5**. In that case, the Commissioner responded to certain Requests for Admission as follows:

> a. Request for Admission 57 stated: "Admit that Complainant considers the number of citations that the inspectors issue to employers in North Carolina in a year when it reviews its inspectors' performance." After stating several objections, the Commissioner responded: "**Complainant admits that inspectors are provided with performance reviews annually as required by law, which consider factors including, but not limited to, the <u>number of inspections</u> opened and closed, the <u>number of citations</u> issued and upheld, and the quality of writing in the inspector's reports.**" Ex. 5 (underline emphasis added).

> b. The Commissioner incorporated the response to Request for Admission 57 in the responses to Requests for Admission 58 and 59. Those requests stated: "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina" and "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina by basing

their bonuses or other monetary compensation in part on how many citations they issue to employers," respectively. Ex. 5.

26.    In Docket No. OSHANC 2020-6280, before the Review Commission, the respondent served requests for admission on the Commissioner, to which the Commissioner supplied written, verified responses under oath on December 9, 2020. A true and accurate copy of the relevant portions of the Commissioner's responses are (with non-party employer name redacted) attached as **Exhibit 6**. In that case, the Commissioner responded to certain Requests for Admission as follows:

    a.    Request for Admission 119 stated: "Admit that Complainant's inspectors are eligible to receive a bonus or other monetary compensation based upon their work for the year." After stating several objections, the Commissioner responded: "**Complainant admits that Complainant pays its Occupational Safety and Heath Compliance Officers a salary and that salary may be subject to increases based upon quality of work, as appropriate. Except as admitted, denied.**" Ex. 6.

    b.    The Commissioner incorporated the response to Request for Admission 119 in the responses to Requests for Admission 120, 124, and 125. Request 120 stated: "Admit that the number of citations that an inspector for Complainant issues in a given year affects that inspector's bonus or other monetary compensation for that year." Request 124 stated: "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina." Request 125 stated: "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina by basing

12

their bonuses or other monetary compensation in part on how many citations they issue to employers." Ex. 6.

    c. Request for Admission 123 stated: "Admit that Complainant considers the number of citations that the inspector's issue to employers in North Carolina in a year when it reviews its inspectors' performance." After stating several objections and that "**Complainant cannot respond to this request**," the Commissioner responded: "**Complainant does admit that inspectors are reviewed as required by law annually which consider the performance of the inspector including, but not limited to things such as the <u>number of inspections</u> opened and closed, the <u>number of citations</u> issued and upheld, and the quality of writing in the inspector's reports. For any other purpose, subject to the objection earlier raised, this request is denied.**" Ex. 6 (underlying emphasis added).

27.    In NC OSHRC Docket No. OSHANC 2020-6310, before the Review Commission, the respondent served requests for admission on the Commissioner, to which the Commissioner supplied written, verified responses under oath on December 2, 2020. A true and accurate copy of the relevant portions of the Commissioner's responses (with non-party employer name redacted) are attached as **Exhibit 7**. In that case, the Commissioner responded to certain Requests for Admission as follows:

    a. Request for Admission 84 stated: "Admit that Complainant's inspectors are eligible to receive a bonus or other monetary compensation based upon their work for the year." After stating several objections, the Commissioner responded: "**Complainant admits that Complainant pays its**

**Occupational Safety and Heath Compliance Officers a salary and that salary may be subject to increases based upon quality of work, as appropriate. Except as admitted, denied.**" Ex. 7.

b.  The Commissioner incorporated the response to Request for Admission 84 in the responses to Requests for Admission 85, 89, and 90.[1] Request 85 stated: "Admit that the number of citations that an inspector for Complainant issues in a given year affects that inspector's bonus or other monetary compensation for that year." Request 89 stated: "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina." Request 90 stated: "Admit that Complainant incentivizes its inspectors to issue citations to employers in North Carolina by basing their bonuses or other monetary compensation in part on how many citations they issue to employers." Ex. 7.

c.  Request for Admission 88 stated: "Admit that Complainant reviews its inspectors' performance by considering in part the number of citations the inspectors issue to employers in North Carolina in a particular year." After stating several objections and that "**Complainant cannot respond to this request**," the Commissioner responded: "**Complainant does admit that inspectors are reviewed as required by law annually which consider the performance of the inspector including, but not limited to things such as the number of inspections opened and closed, the number of citations**

---

[1] These responses, including the response to Request 85, actually state that the Commissioner "incorporates by reference its response to RFA #85." Ex. 7 at 34–36. But it appears that the Commissioner intended to incorporate the substantive response to Request 84.

issued and upheld, and the quality of writing in the inspector's reports. **For any other purpose, subject to the objection earlier raised, this request is denied.**" Ex. 7.

28. In NC OSRHC Docket No. OSHANC 2020-6321, before the Review Commission, the respondent served requests for admission on the Commissioner, to which the Commissioner supplied written responses on December 4, 2020. A true and accurate copy of the relevant portions of the Commissioner's responses (with non-party employer name redacted) are attached as **Exhibit 8**. In that case, the Commissioner responded to certain Requests for Admission as follows:

      a. In the above-referenced case, Request for Admission 97 stated: "Admit that Complainant's inspectors are eligible to receive a bonus or other monetary compensation based upon their work for the year." After stating several objections, the Commissioner responded: "**Complainant admits that it pays its Occupational Safety and Heath Compliance Officers a salary and that salary may be subject to increases based upon quality of work, as appropriate. Except as admitted herein, this Request is denied.**" Ex. 8.

      b. The Commissioner incorporated the response to Request for Admission 97 in the response to Request for Admission 98, which stated: "Admit that the number of citations that an inspector for Complainant issues in a given year effects that inspector's bonus or other monetary compensation for that year." Ex. 8.

      c. Request for Admission 101 stated: "Admit that Complainant considers the number of citations that the inspectors issue to employers in North Carolina

15

in a year when it reviews its inspectors' performance." After stating several objections, the Commissioner responded: "**Complainant admits that inspectors are provided with performance reviews annually as required by law, which consider factors including, but not limited to, the <u>number of inspections</u> opened and closed, the <u>number of citations</u> issued and upheld, and the quality of writing in the inspector's reports.**" Ex. 8 (underline emphasis added).

### Defendants' Enforcement Activities Against ISG

29.     In September 2020, Plaintiff ISG, doing business as Universal Blastco, conducted laminating work at the Evergreen Packaging paper mill facility located at 175 Main Street in Canton, North Carolina.

30.     On September 21, 2020, work-related fatalities at the Evergreen facility were reported to NC OSHA. NC OSHA opened inspections of Evergreen Packaging, LLC, Rimcor, Inc., and ISG related to that incident.

31.     As part of its investigation of ISG, NC OSHA requested information from ISG, including documents and written statements from its employees.

32.     These enforcement activities taken against ISG by NC OSHA are *ultra vires* and without proper legal authority because Defendants are operating the North Carolina State Plan in violation of the OSH Act and the stated terms of the Plan itself, and are enforcing an official policy or practice that is preempted by federal law.

33.     On March 16, 2021, under its improper program for incentivizing inspectors to issue citations, NC OSHA issued thirteen (13) citation items to ISG, relating to the September 21, 2020 accident. As an example of NC OSHA's improper, goal-orientated focus on issuing

citations, approximately six (6) of the citation items relating to a single entry permit. A true and accurate copy of the citations is attached as **Exhibit 9**.

34.     Without this Court's immediate intervention, NC OSHA will continue its *ultra vires* enforcement activities against ISG and other employers, including but not limited to having its compliance officers, who have been illegally incentivized to issue citations, to issue citations to other employers, and for NC OSHA to prosecute the citations issued to ISG for alleged violations of occupational safety and health standards, and commencing administrative proceedings against ISG in the Review Commission.

**Statement of Claims**

**Count I: Violation of the OSH Act**
**28 U.S.C. §§ 2201 and 2202**

35.     ISG restates and incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

36.     The terms of the OSHA-approved North Carolina State Plan "provide a program for the enforcement of the State standards which is, or will be, at least as effective as that provided in the [OSH] Act, and provide assurances that the State's enforcement program will continue to be at least as effective as the Federal program," as required by 29 C.F.R. § 1902.3(d)(1).

37.     The OSH Act provides: "The Secretary shall not use the results of enforcement activities, such as the number of citations issued or penalties assessed, to evaluate employees directly involved in enforcement activities under this chapter or to impose quotas or goals with regard to the results of such activities." 29 U.S.C. § 657(h)

38.     Defendants have violated and continue to violate § 657(h) by maintaining an official policy or practice of evaluating the performance of NC OSHA compliance officers based on the number of citations issued or penalties assessed.

17

39.     Neither the Occupational Safety and Health Act of North Carolina nor any administrative regulation promulgated under that State statute contains standards similar to those set forth in 29 U.S.C. § 657(h). Thus, the issues addressed by § 657(h) are not covered by the North Carolina State Plan.

40.     Because the issues addressed by § 657(h) are not covered by North Carolina State Plan, § 657(h) continues to apply to and impose obligations on Defendants, the North Carolina Department of Labor, and NC OSHA.

41.     Because Defendants have violated and continue to violate § 657(h) by maintaining an official policy or practice of evaluating the performance of NC OSHA compliance officers based on the number of citations issued or penalties assessed, Defendants' administration of the North Carolina State Plan is out of compliance with the OSH Act.

42.     Because Defendants have violated and continue to violate § 657(h) by maintaining an official policy or practice of evaluating the performance of NC OSHA compliance officers based on the number of citations issued or penalties assessed, Defendants' administration of the North Carolina State Plan is out of compliance with the terms of the Plan itself.

## Count II: Preemption by the OSH Act
## 28 U.S.C. §§ 2201 and 2202

43.     ISG restates and incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

44.     The Supremacy Clause of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the

18

supreme Law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

45.    The Supremacy Clause mandates that federal law preempts any State regulation of any area over which Congress has expressly or impliedly exercised exclusive authority or which is constitutionally reserved to the federal government. The Supremacy Clause also mandates that federal law preempts contrary state law.

46.    Congress enacted the OSH Act upon a finding that "personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments." 29 U.S.C. § 651(a). The OSH Act and regulations promulgated under it have established a comprehensive system of laws, regulations, procedures, and administrative agencies to regulate occupational safety and health.

47.    By enacting 29 U.S.C. § 657(h), Congress chose to specifically regulate certain aspects of the performance evaluations of government employees who directly participate in the enforcement of occupational safety and health standards.

48.    Defendants' official policy or practice of evaluating compliance officers' performance based on the number of citations issued or penalties assessed is contrary to § 657(h). Accordingly, the official policy or practice is preempted by federal law.

**Count III: Violation of the Due Process Clause of the Fourteenth Amendment**
**42 U.S.C. § 1983**

49.    ISG restates and incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

19

50.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1.

51.     The Due Process Clause guarantees certain fundamental rights, including the right to a meaningful hearing prior to the deprivation of life, liberty, or property.

52.     The right to conduct business and earn a profit is a property interest protected by the Due Process Clause.

53.     The right to choose one's field of private employment is a liberty interest protected by the Due Process Clause.

54.     Defendants have violated ISG's due process rights by engaging in enforcement activities against ISG despite lacking the proper legal authority to do so.

55.     Defendants have violated ISG's due process rights by incentivizing their compliance officers to commence investigation and enforcement activities and issue citations and penalties against ISG pursuant to an official policy or practice that violates and is preempted by federal law.

56.     Without this Court's immediate intervention, Defendants will further violate ISG's due process rights by commencing administrative proceedings to prosecute the citations issued against ISG despite lacking the proper legal authority to do so.

57.     Without this Court's immediate intervention, Defendants will further violate ISG's due process rights by commencing administrative proceedings against ISG predicated upon the citations issued pursuant to and motivated by an official policy or practice that violates and is preempted by federal law.

## **Prayer for Relief**

Wherefore, ISG respectfully requests the following relief:

(a)     A declaration that Defendants' official policy or practice of evaluating compliance officers' performance based on the number of citations issued or penalties assessed violates the OSH Act;

(b)     A declaration that the official policy or practice described in subsection (a) has placed Defendants' administration of the North Carolina State Plan out of compliance with the OSH Act;

(c)     A declaration that the official policy or practice described in subsection (a) has placed Defendants' administration of the North Carolina State Plan out of compliance with the stated terms of the Plan itself;

(d)     A declaration that the official policy or practice described in subsection (a) is preempted by the OSH Act;

(e)     A declaration that by maintaining the official policy or practice described in subsection (a), Defendants have violated ISG's substantive due process rights under the Fourteenth Amendment;

(f)     A declaration that by maintaining the official policy or practice described in subsection (a), Defendants have violated ISG's procedural due process rights under the Fourteenth Amendment;

(g)     A preliminary and permanent injunction prohibiting Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction from engaging in enforcement activities against ISG, including initiating or maintaining administrative proceedings;

21

(h)     A preliminary and permanent injunction prohibiting Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction from engaging in enforcement activities against any employer that has been inspected or issued citations under the official policy or practice described in subsection (a), including issuing citations, prosecuting existing citations, or initiating or maintaining administrative proceedings;

(i)     An order awarding ISG its costs incurred in this litigation, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

(j)     Such other relief as the Court deems equitable, just, and proper.

 Respectfully submitted, March 31, 2021.

INDUSTRIAL SERVICES GROUP, INC., d/b/a/
UNIVERSAL BLASTCO
*By Counsel*


*/s/ Travis W. Vance*
Travis W. Vance (N.C. Bar No. 48676)
David I. Klass (N.C. Bar No. 53342)
Benjamin S. Morrell (N.C. Bar No. 56676)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC  28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
E-mail: tvance@fisherphillips.com
E-mail: dklass@fisherphillips.com
E-mail: bmorrell@fisherphillips.com
*ATTORNEYS FOR PLAINTIFF*