**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

| | |
|---|---|
| INDUSTRIAL SERVICES GROUP, INC., d/b/a/ UNIVERSAL BLASTCO,<br><br>          Plaintiff,<br><br>          v.<br><br>JOSH DOBSON, *in his official capacity as North Carolina Commissioner of Labor*; and KEVIN BEAUREGARD, *in his official capacity as Director of the Occupational Safety and Health Division of the North Carolina Department of Labor*,<br><br>          Defendants. | Civil Action No. 1:21-cv-00090-MR-WCM |

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

Defendants' motions to dismiss and for judgment on the pleadings—which they have styled as eight separate "motions"—repeatedly distort the text of the federal Occupational Safety and Health ("OSH") Act and mischaracterize the relief sought by Plaintiff Industrial Services Group, Inc. ("ISG") in its complaint. ISG seeks a declaratory judgment finding that Defendants' official policy or practice of incentivizing its compliance officers to issue citations to employers directly violates and is preempted by a provision of the OSH Act, 29 U.S.C. § 657(h). ISG also seeks

1

an injunction prohibiting them from continuing to do so. Despite Defendants' repeated arguments to the contrary, this sort of relief lies well within the Article III powers of the federal courts and does not depend on any action by the United States Department of Labor.

The complaint states a claim under 42 U.S.C. § 1983 because Defendants' *ultra vires* enforcement activities have interfered with and infringed on ISG's established due process rights protected by the Fourteenth Amendment. And these infringements will continue without this Court's intervention. Additionally, Defendants have not met their burden to show that ISG has failed to exhaust any administrative remedies or join a necessary party. For these reasons, explained more fully below, the should deny each of Defendants' motions.

## Legal Standards

On a motion to dismiss for failure to state a claim, the Court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Mason v. Machine Zone, Inc*., 851 F.3d 315, 319 (4th Cir. 2017). To survive a Rule 12(b)(6) motion, a complaint must simply contain sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss under Rule 12(b)(1), "[w]here a defendant contends that a complaint fails to allege facts upon which the Court can base subject matter jurisdiction, the Court, like ruling on a motion to

2

dismiss pursuant to Rule 12(b)(6), assumes as true the factual allegations in the complaint." *Newman v. Tribal Casino Gaming Enter.*, No. 1:17-cv-77, 2017 WL 9516055, at *1 (W.D.N.C. Sept. 8, 2017) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)), *aff'd*, 714 F. App'x 316 (4th Cir. 2018). The same goes for a motion under Rule 12(b)(7). *See McCracken v. Black Diamond Co.*, No. 1:11-CV-00073, 2012 WL 5439857, at *5 (W.D. Va. May 6, 2012) ("In ruling on a 12(b)(7) motion, a court must accept as true the allegations of the complaint. In addition, the burden rests on the moving party to show that the party who was not joined is needed for a just adjudication." (citation omitted)).

"Like motions filed under Rule 12(b)(6), motions pursuant to Rule 12(c) call for the pleadings to be construed in the light most favorable to the non-moving party." *Lawrimore v. Progressive Direct Ins. Co.*, No. 2:14-CV-01275-RMG, 2014 WL 12609460, at *2 (D.S.C. July 22, 2014), *aff'd*, 627 F. App'x 253 (4th Cir. 2016). Accordingly, "[t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." *John S. Clark Co. v. United Nat'l Ins. Co.*, 304 F. Supp. 2d 758, 763 (M.D.N.C. 2004). "When considering a defendant's motion for judgment on the pleadings, the court must base its decision solely on information obtained from the pleadings." *Id.* "Entry of judgment on the pleadings is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support

3

of his claim which would entitle him to relief." *Id.* at 764 (citation and quotation marks omitted).[1]

## Argument

### I.    Under *Ex Parte Young*, sovereign immunity does not bar this lawsuit.

Defendants claim that they are immune from suit pursuant to North Carolina's sovereign immunity, as recognized by the Eleventh Amendment. But ISG has not sued the State of North Carolina, the North Carolina Department of Labor, or NC OSHA. It has sued two individuals who are State officials in their official capacities for injunctive and declaratory relief. Thus, the century-old doctrine articulated by the Supreme Court in *Ex Parte Young* applies. 209 U.S. 123 (1908). Far from a "narrow exception," as Defendants attempt to characterize it (D.E. 13-1 at 12), *Young* established "a gaping hole in the shield of sovereign immunity created by the eleventh amendment and the Supreme Court," *Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988). "This doctrine holds that acts by state officials which are

---

[1] Defendants also mention Rule 12(b)(2) in their brief, but never explain why or how dismissal for lack of personal jurisdiction is warranted. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" are forfeited; "it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) (cleaned up). Defendants never actually argue for dismissal for lack of personal jurisdiction in their brief and instead only include a single quote mentioning it. (*See* D.E. 13-1 at 9.) Accordingly, this argument is forfeited. In any event, a Rule 12(b)(2) motion based on sovereign immunity would fail for the reasons discussed in Section I, *infra*.

contrary to federal law cannot have been authorized or be ratified by the state; and suits seeking to enjoin such wrongful and unauthorized acts are not suits against the state and a federal courts' [sic] injunction against such wrongful acts is not a judgment against the state itself." *Saltz v. Tenn. Dep't of Emp't. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). And the doctrine applies even if a State has not waived its immunity or otherwise consented to the suit and regardless of whether Congress has abrogated the States' sovereign immunity in the statute creating the plaintiff's cause of action. *See Council 31 of Am. Fed'n of State, Cty. & Mun. Emps. v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012).

"The essential ingredients of the *Ex parte Young* doctrine are that a suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Saltz*, 976 F.2d at 968. ISG's complaint—by design—satisfies each of these criteria. Defendants are State officials sued in their official capacities, and the complaint seeks only forward-looking declaratory and injunctive relief. (*See* D.E. 1 at 21–22.)

Defendants argue that *Young* does not apply because the complaint does not seek prospective relief, that is, "there is no threat of the commencement of proceedings" now that proceedings have already commenced. (*See* D.E. 13-1 at 12.) But there absolutely is. Without this Court's intervention via an injunction,

Defendants will engage in additional *ultra vires* enforcement activities against ISG, including continuing to prosecute the improperly issued citations outlined in the complaint, opening new inspections, issuing new citations, and commencing a new slate of administrative proceedings against it, perhaps in retaliation for ISG bringing this lawsuit. ***In fact, Defendants have not yet filed an enforcement complaint against ISG for the very citations referenced in its Complaint, but have a deadline of doing so of June 28, 2021***. (Exhibit 1). The complaint also seeks to enjoin Defendants' continued enforcement activities against ISG related to the citations currently in litigation in NC OSHRC. Defendants have not stopped violating federal law simply because administrative proceedings have "commenced." Thus, the complaint requests prospective relief and the *Young* exception applies.[2]

## II.  The complaint raises a federal question because 29 U.S.C. § 657(h) applies to Defendants.

In their second "motion," Defendants argue that "this case presents no federal question" because 29 U.S.C. § 657(h) "is not applicable to State Plans and Plaintiff has acknowledged that North Carolina operates under a State Plan approved by USDOL." (D.E. 13 at 2–3.) But the text of the OSH Act, federal regulations

---

[2] Defendants also argue that the *Young* exception does not apply because they have not violated federal law and because a federal court cannot compel a State officer to carry out a duty imposed by State law. (D.E. 13-1 at 12–13.) Because this argument folds into the merits of Defendants' other "motions," ISG addresses it *infra*.

promulgated under it, and official policy documents authored by Fed OSHA show that this assertion is plainly false.

Explaining this issue requires some background on the structure of the OSH Act and the way State plans operate. The Act created Fed OSHA and tasked it with administering and enforcing the Act, including promulgating specific occupational safety and health standards through rulemaking. At the same time it laid the groundwork for a comprehensive federal regulatory scheme, the Act also "encourag[ed] the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws." 29 U.S.C. § 651(b)(11). To assume such responsibility, the State must submit (and Fed OSHA must approve) a "State Plan" that provides standards "at least as effective in providing safe and healthful employment" as those developed by OSHA. 29 U.S.C. § 667(c)(2). It must also "provide[ ] for a right of entry and inspection of all workplaces subject to this chapter which is at least as effective as that provided in section 657." *Id.* § 667(c)(3). 29 C.F.R. § 1902.3 lists the "specific criteria" that "[a] State plan must meet" in order to receive approval from Fed OSHA. A State Plan must "provide a program for the enforcement of the State standards which is, or will be, at least as effective as that provided in the Act, and provide assurances that the State's enforcement program will continue to be at least as effective as the Federal program." 29 C.F.R. § 1902.3(d)(1).

This framework gives the States three options for how to proceed. The first two are straightforward. First, a State can do nothing. In that case, the OSH Act and federal regulations promulgated under it apply directly to employers within that State, and Fed OSHA assumes direct responsibility for enforcing those standards. Second, a State can create and submit a comprehensive State plan for OSHA approval, covering all occupational safety and health standards and imposing its own requirements that are at least as effective as federal standards. In that case, once Fed OSHA issues final approval of the State plan, several sections of the OSH Act (including § 667) and occupational safety and health "standards promulgated under section 655" cease to apply "with respect to any occupational safety or health issues covered under the [State] plan." 29 U.S.C. § 667(e). Then, the State's own occupational safety and health laws apply, taking the place of federal standards, while a State administrative agency takes the place of Fed OSHA and begins administering and enforcing the State-created standards.

In option three, a State creates and receives approval of a State plan that is *not* comprehensive, i.e., it does not address every occupational safety and health standard covered by federal law. Fed OSHA recently explained what happens in this situation:

> A State Plan must have standards promulgated under state law that: are identical to OSHA standards; or are ALAE [at least as effective] as the comparable OSHA standards; or have been found by OSHA to provide protection ALAE as comparable OSHA standards. Where a State Plan

8

has not promulgated standards in an area or has promulgated standards that OSHA has found not to provide protection as effective as that provided by the comparable OSHA standards, *the State Plan will not be considered operational in that area.*

*State Plan Policies & Procedures Manual*, Directive No. CSP 01-00-005, at 22 (O.S.H.A. May 6, 2020) (emphasis added).[3] This means that in those areas not adequately covered by the State plan, federal law continues to apply directly. After all, the OSH Act makes clear that once a State plan receives final approval, federal law ceases to apply *only* "with respect to any occupational safety or health issues *covered under the plan*." 29 U.S.C. § 667(e) (emphasis added).

Here, the North Carolina State Plan falls under scenario three. North Carolina created a State plan and received final approval from OSHA, but the Plan does not cover every occupational safety and health standard addressed by federal law. Specifically, it does not contain an analogue to 29 U.S.C. 657(h), which provides: "The Secretary shall not use the results of enforcement activities, such as the number of citations issued or penalties assessed, to evaluate employees directly involved in enforcement activities under this chapter or to impose quotas or goals with regard to the results of such activities." Quite the contrary, Defendants maintain a policy or practice mandating that the performance of "compliance officers"—who inspect workplaces for hazardous conditions and issue citations for alleged violations—be

---

[3] *See* https://www.osha.gov/sites/default/files/enforcement/directives/CSP_01-00-005.pdf.

evaluated based on, among other things, "the number of inspections opened and closed, and the number of citations issued and upheld." (*See* D.E. 1 at 2.) Because the North Carolina State Plan does not contain a standard "at least as effective" as 29 U.S.C. § 657(h), the federal standard continues to apply.[4]

## III.   ISG's complaint states a claim under 42 U.S.C. § 1983.

Defendants' third "motion" seeks dismissal of ISG's claims under 42 U.S.C. § 1983. Section 1983 affords redress against any person who under color of state law deprives another person of any federal constitutional or statutory right. The complaint pleads violations of ISG's substantive and procedural due process rights under the Fourteenth Amendment. (D.E. 1 at 19–20, 21); *see* U.S. Const. amend. XIV, § 1. "Due process has both a substantive and a procedural component." *Tollbrook*, *LLC v. City of Troy*, 774 F. App'x 929, 933 (6th Cir. 2019). "Procedural due process is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property; substantive due process 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *EJS Props.,*

---

[4] ISG addresses the other arguments contained in Defendants' second "motion" in subsequent sections, *infra*.

*LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)).

Both types of due process claim require that the plaintiff have a constitutionally protected life, liberty, or property interest. *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010); *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008). The complaint asserts violations of ISG's property interest ("[t]he right to conduct business") and liberty interest ("[t]he right to choose one's field of private employment"). (D.E. 1 at 20); *see San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 704 (5th Cir. 1991) ("Kacal's property interest in her business is essentially her interest in the lost profits, which are sought merely as the measure of damages in this action. Kacal's property interest in the profits of her business and her liberty interest in operating her business do rise to the level of protectible interests."); *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir. 1983) ("Generally speaking, freedom to choose and pursue a career, 'to engage in any of the common occupations of life,' *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923), qualifies as a liberty interest which may not be arbitrarily denied by the State." (parallel citations omitted)).

The complaint alleges that Defendants have infringed ISG's due process rights by engaging in *ultra vires* actions to enforce occupational safety and health laws in blatant violation of federal law. *Ultra vires* actions by government officials

may support a due process claim under § 1983. *See, e.g.*, *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 789 (2d Cir. 2007) ("[I]f the Town Board did not have authority for the actions it took regarding Fun Quest's permit — as it appears it did not — the Board's actions were ultra vires and, as a result, sufficiently arbitrary to amount to a substantive due process violation."); *Brady v. Town of Colchester*, 863 F.2d 205, 215–16 (2d Cir. 1988) (if the town revoked a citizen's building permit without "authority under state law" to do so, "a trier of fact could conclude that there was no 'rational basis' for the [town's] actions, and that, as a result, the [town] violated [the citizen's] rights to substantive due process"). Perhaps recognizing the validity of ISG's claim, Defendants do not even argue in their brief that ISG's substantive due process claim should be dismissed.[5]

For the procedural due process claim, ISG must show either that "it was deprived of a liberty or property interest as a result of an established state procedure, which itself violates procedural due process rights." *Wedgewood*, 610 F.3d at 349–50 (cleaned up). Defendants' established state procedure here is its continued administration of the North Carolina State Plan in violation of federal law. The complaint alleges that Defendants have engaged in *ultra vires* enforcement activities (including initiating inspections of ISG's work sites, issuing citations to ISG, and

---

[5] If they attempt to do so in their reply brief, the Court should reject the argument as forfeited. *See Cherry v. City of Philadelphia*, 216 F. App'x 205, 209 (3d Cir. 2007) ("[A]rguments raised for the first time in a reply brief are forfeited.")

maintaining enforcement proceedings in NC OSHRC) that have infringed ISG's due process rights related to its business. Beyond that, Defendants' specific violation of federal law here is improperly incentivizing its compliance officers to issue citations, which directly and adversely affects ISG, an employer that has been issued citations by Defendants.

Moreover, the process provided by the State—challenging the citations in NC OSHRC—is constitutionally inadequate. "A process is constitutionally inadequate when a remedy for an unlawful deprivation is not available." *Frank v. Lake Worth Utils.*, 464 F. App'x 802, 805 (11th Cir. 2012). As explained in more detail in Section IV, *infra*, NC OSHRC does not have the power to remedy the constitutional violations committed by Defendants. It cannot issue injunctive relief or prevent Defendants from continuing to interfere with ISG's due process rights by enforcing occupational safety and health standards in violation of federal law. Accordingly, ISG's complaint states a claim for procedural due process as well.

## IV. ISG has not failed to exhaust any required administrative remedies.

In their fourth "motion," Defendants argue that the Court should dismiss the complaint based on an alleged failure by ISG to exhaust federal and state administrative remedies. (D.E. 13 at 4.) Here, Defendants attempt to improperly shift the burden of persuasion to ISG by highlighting the inadequacy-of-remedy inquiry. (*See* D.E. 13-1 at 21.) But "failure to exhaust is [an] affirmative defense that is [the]

defendant's burden to prove." *Williams v. Target Stores*, 479 F. App'x 26, 28 (8th Cir. 2012) (collecting cases). "[A]ny doubt on the issue must be resolved in favor" of the plaintiff—especially at the motion-to-dismiss stage. *Id.* The same rule applies with regard to pleading standards. While Defendants fault ISG for failing to "plead the insufficiency or futility" of administrative remedies (D.E. 13-1 at 21), the "defendant bears [the] burden *of pleading* and proving that plaintiff has failed to exhaust administrative remedies," *Williams*, 479 F. App'x at 28 (emphasis added).

Defendants have not come close to meeting their burden here. "Where a statute requires exhaustion of administrative remedies, the doctrine is jurisdictional, . . . otherwise it is a flexible doctrine." *Jacobson v. Director, Bureau of Mediation Servs., Minn.*, 508 F. Supp. 715, 717 (D. Minn. 1981) (collecting authority). Defendants do not argue that any statute mandates exhaustion of any of ISG's claims in this lawsuit. (*See* D.E. 13-1 at 19.) Thus, "[b]ecause this case is not governed by . . . any . . . statute requiring exhaustion[ ], the exhaustion doctrine applies only 'as a matter of judicial discretion.'" *Comm. of Blind Vendors of D.C. v. District of Columbia*, 28 F.3d 130, 134 (D.C. Cir. 1994) (quoting *Darby v. Cisneros*, 509 U.S. 137, 154 (1993)).

Defendants have not established that it would be appropriate to apply the exhaustion doctrine to any of ISG's claims as a matter of judicial discretion, either. Defendants argue that ISG should have filed a Complaint About State Program

Administration ("CASPA") with Fed OSHA. *See* 29 C.F.R. § 1954.20. But they fail to identify a single instance of litigation anywhere, ever, where a claim was dismissed for failure to exhaust by filing a CASPA.[6] Moreover, ISG's complaint does not seek withdrawal of the North Carolina State Plan. It requests a declaratory judgment and an injunction preventing Defendants from violating federal law.

Nor have Defendants shown that exhaustion of any State administrative remedy is required here. Defendants assert that ISG "has initiated but has not exhausted the state remedy available to contest the citations it was issued." (D.E. 13 at 4.) But they have not met their burden to prove that the exhaustion doctrine applies to this State administrative remedy or to ISG's claims.

"When the General Assembly provides an effective administrative remedy by statute, that remedy is exclusive and the party must pursue and exhaust it before

_____

[6] In any event, "[a]dministrative exhaustion requirements apply only where there is a meaningful administrative remedy." *SUFI Network Servs., Inc. v. United States*, 102 Fed. Cl. 656, 661 (Fed. Cl. 2012). OSHA guidance confirms that the CASPA procedure does not provide one. "CASPAs do not provide a formal review mechanism for individual complainants who seek to overturn administrative or judicial determinations made by the state." *State Plan Policies and Procedures Manual*, Directive No. CSP 01-00-004, at 97 (O.S.H.A. Sept, 22, 2015), https://www.osha.gov/OshDoc/Directive_pdf/CSP_01-00-004.pdf. "Because State Plans operate under authority of state law and are administered by state agencies, federal OSHA has no authority to directly affect a change in the outcome of a particular state administrative or judicial action." *Id.* Under the CASPA procedure, OSHA cannot provide any remedy that ISG asks for in its complaint, including injunctive and declaratory relief. But again, it is Defendants' burden to prove that the exhaustion doctrine applies in the first instance, and they have not done so.

resorting to the courts." *Jackson v. N.C. Dep't of Human Res.*, 505 S.E.2d 899, 903 (N.C. Ct. App. 1998). But here, the State administrative remedy does not cover or contemplate the types of claims that ISG asserts in this lawsuit. This is different from an argument that it is inadequate; here it does not apply in the first instance. ISG has not sued NC OSHRC or any administrative officer associated with that State adjudicatory agency. And this lawsuit does not seek review of any decision made by NC OSHRC. Instead, it seeks to restrain Defendants, who are officials associated with the North Carolina Department of Labor and its OSH division—a separate State agency—from engaging in enforcement activities in contravention of clear federal law. Such activities span a broader range of conduct than simply litigating against ISG in the forum of NC OSHRC. They include conducting inspections, issuing citations, and litigating against ISG in other fora. For example, the North Carolina OSH Act authorizes Defendant Dobson to institute criminal actions and apply for injunctive relief in the State courts. *See* N.C. Gen. Stat. § 95-133(b)(9). All of these activities are *ultra vires* because Defendants are administering the North Carolina State Plan out of compliance with federal law. And NC OSHRC could not prevent Defendants from engaging in any of these activities. It lacks the power to issue injunctions.

NC OSHRC does not even have the power to prevent Defendants from engaging in *ultra vires* enforcement activities in that forum itself. Like how

sovereign immunity includes immunity from not only judgment but also suit, the harm ISG alleges in the complaint includes having to defend against Defendants' prosecution of those proceedings, separate and apart from any final order issued by NC OSHRC. So this is not a case in which the state administrative remedy would be merely inadequate. Rather, it would not address ISG's claims *at all* and could not grant the relief ISG requests.

Thus, Defendants cannot show that the exhaustion doctrine applies to ISG's claims. Finally, the Supreme Court has made clear that "exhaustion of state administrative remedies [is] not . . . required as a prerequisite to bringing an action pursuant to [42 U.S.C.] § 1983." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982); (*see* D.E. 1 at 19–20). So Defendants' arguments here related to ISG's § 1983 claims are particularly inapt.

## V. Preliminary Injunction

Defendants' fifth "motion," arguing that preliminary injunctive relief is inappropriate, reads more like a response in opposition to a motion for a preliminary injunction than a motion to dismiss. But ISG has not yet filed a motion for a preliminary injunction in this lawsuit. When it does, Defendants can argue that preliminary injunctive relief is inappropriate if they wish. But for now, these arguments are unripe and premature.

17

## VI. The United States Department of Labor is not a necessary party.

In their sixth "motion," Defendants argue that the Court should dismiss this case for failure to join a necessary party: the United States Department of Labor. (D.E. 13-1 at 23); *see* Fed. R. Civ. P. 12(b)(7), 19(a), (b). Defendants admit that they bear the burden to "prove that the missing party is both necessary under Rule 19(a) and indispensable under Rule 19(b)." (D.E. 13-1 at 24); *see McCracken*, 2012 WL 5439857, at *5.

Defendants have not met their burden here. They assert that "USDOL would have to be a party to the case in order to determine" the truth of ISG's allegations that Defendants are administering the North Carolina State Plan in violation of federal law and "initiate the procedure to withdraw approval of North Carolina's State Plan if appropriate." (*Id.*) But ISG's complaint does not request that relief. ISG does not ask the Court to order Fed OSHA to withdraw approval of the North Carolina State Plan—or to do anything else. It seeks a declaration that Defendants are currently violating federal law and enforcing a preempted State law and an injunction preventing them from doing so. Defendants do not point to a single statute or any other authority to support their argument that the United States Department of Labor has somehow usurped the authority of the federal judiciary "to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Federal courts have the

power to issue injunctions and declaratory judgments and the OSH Act does not change that.

Thus, none of the relief requested in the complaint would "require a superior government officer to take action." *Progressive Sec. Inc. v. Young*, 267 F. Supp. 20, 22 (S.D. W. Va. 1967). For that matter, Defendants have not established that the United States Department of Labor is a "superior officer" to them. As they emphasize in their brief, Defendants are officers of a State with its own (limited) sovereignty, not the federal government.

## VII. Federal law preempts Defendants' policy or practice of incentivizing compliance officers to issue citations.

Defendants' seventh "motion" concerns ISG's request for a declaration that 29 U.S.C. § 657(h) preempts their official policy or practice of evaluating compliance officers' performance based on the number of citations issued or penalties assessed. As discussed in Section II, *supra*, Defendants' argument that "there is nothing that requires a State Plan to comply with" 29 U.S.C. § 657(h) is flatly wrong and ignores the plain language of § 667(e). (D.E. 13-1 at 25.) Again, because the North Carolina State Plan does not contain a standard "at least as effective as that provided in section 657[(h)]," § 667(c)(3), that issue is not "covered under the plan," § 667(e), meaning that § 657(h) continues to apply directly.

A natural and inevitable consequence of this is preemption. This doctrine, which gives force to the Supremacy Clause, holds that "any state law, however

19

clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138 (1988); *see* U.S. Const. art.VI, cl. 2 ("This Constitution, and the Laws of the United States . . . made in Pursuance thereof; . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). The complaint asserts that the doctrine applies here because Defendants' official policy or practice of evaluating compliance officers' performance based on the number of citations issued or penalties assessed conflicts with § 657(h), which forbids this exact conduct. The Supreme Court has explicitly held that "the OSH Act pre-empts all state 'occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated.'" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 105 (1992) (quoting § 667(b)).

While Defendants assert once again that "[o]nly Federal OSH has the authority to approve (or disapprove) a state plan," ISG's complaint does not ask for that relief. (D.E. 13-1 at 26.) Instead, ISG seeks a declaratory judgment finding that a federal law preempts a contrary State law. This relief lies well within the established powers of the federal courts. *See* 28 U.S.C. §§ 2201(a), 2202.

## VIII. The motion for judgment on the pleadings should be denied for the reasons discussed above.

Defendants' arguments in support of their motion for judgment on the pleadings merely regurgitate those made in support of the motions discussed above,

with the added request that the Court dig through the nearly 500 pages of exhibits attached to their answer for evidence that "further clarifies the bases for Defendants' motions to dismiss." (D.E. 13-1 at 28.) The Court should decline Defendants' invitation to engage in this value-negative time sink and deny each of their "motions," including this one.

## IX. Conclusion

For the reasons discussed above, the Court should deny Defendants' motions to dismiss and for judgment on the pleadings.

Respectfully submitted, June 18, 2021.

INDUSTRIAL SERVICES GROUP, INC., d/b/a/ UNIVERSAL BLASTCO
*By Counsel*

/s/ *Travis. W. Vance*
Travis W. Vance (N.C. Bar No. 48676)
David I. Klass (N.C. Bar No. 53342)
Benjamin S. Morrell (N.C. Bar No. 56676)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
E-mail: tvance@fisherphillips.com
E-mail: dklass@fisherphillips.com
E-mail: bmorrell@fisherphillips.com
*ATTORNEYS FOR PLAINTIFF*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

| | |
|---|---|
| INDUSTRIAL SERVICES GROUP, INC., d/b/a/ UNIVERSAL BLASTCO, <br><br> Plaintiff, <br><br> v. <br><br> JOSH DOBSON, *in his official capacity as North Carolina Commissioner of Labor*; and KEVIN BEAUREGARD, *in his official capacity as Director of the Occupational Safety and Health Division of the North Carolina Department of Labor*, <br><br> Defendants. | Civil Action No. 1:21-cv-00090-MR-WCM |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I electronically filed the foregoing **Response in Opposition to Defendants' Motions to Dismiss and for Judgment on the Pleadings** with the Clerk of Court using the CM/ECF system, which will send electronic notice to Defendants' counsel, Victoria L. Voight, Esq. (vvoight@ncdoj.gov) and Stacey A. Phipps, Esq. (sphipps@ncdoj.gov).

22

Served June 18, 2021.

Respectfully submitted,

*/s/ Travis W. Vance*
Travis W. Vance
Attorney for Plaintiff
**FISHER & PHILLIPS LLP**

23