IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00090-MR-WCM

| | |
|---|---|
| INDUSTRIAL SERVICES GROUP,<br>INC., d/b/a UNIVERSAL BLASTCO,<br><br>       Plaintiff,<br><br>v.<br><br><br>JOSH DOBSON, *in his official*<br>*capacity as North Carolina*<br>*Commissioner of Labor*, and<br>KEVIN BEAUREGARD, *in his official*<br>*Capacity as Director of the Occupational*<br>*Safety and Health Division of the*<br>*North Carolina Department of Labor*,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)       **MEMORANDUM AND**<br>      **RECOMMENDATION** |

This matter is before the Court on Defendants' "Motions to Dismiss and for Judgment on the Pleadings" (the "Motion," Doc. 13), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I.  Relevant Procedural History

On March 31, 2021, Plaintiff Industrial Services, d/b/a Universal Blastco ("Plaintiff") filed its Complaint against Josh Dobson, who is the North Carolina Commissioner of Labor, and Kevin Beauregard, who is the Director of the

Occupational Safety and Health Division of the North Carolina Department of Labor ("NC OSHA"). Doc 1, at ¶¶ 8, 9.

On June 4, 2021, Defendants filed an Answer. Doc. 12.

That same day, Defendants filed their Motion with a supporting memorandum. Docs. 13, 13-1. Plaintiff subsequently responded in opposition and Defendants replied. Docs. 14, 15. A hearing on the Motion was conducted on December 9, 2021.

## II.    Plaintiff's Allegations

Plaintiff's Complaint alleges as follows:

### A. Allegations Regarding OSHA and the North Carolina State Plan

The federal Occupational Safety and Health Act of 1970 ("OSH Act") created a regulatory scheme for ensuring safe and healthy working conditions. The OSH Act created the federal Occupational Safety and Health Administration ("OSHA") to administer and enforce the OSH Act. Doc. 1 at ¶ 10.

The OSH Act "encourage[ed] the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws." Id. at ¶ 11 (quoting 29 U.S.C. § 651(b)(11)). To that end, a state may develop a "State plan" and submit it to OSHA for approval to assume responsibility for the development and enforcement of safety and health standards within the state. Id. at ¶ 11. A "State plan" must provide

2

standards "at least as effective in providing safe and healthful employment" as OSHA's standards as well as "a program for the enforcement of the State standards which is, or will be, at least as effective as that provided in the Act...." Id. at ¶¶ 11 & 12 (quoting 29 U.S.C. § 667(c)(2); 29 C.F.R. § 1902.3(d)(1)).

Once OSHA approves a "State plan," it continues to evaluate the manner in which the state is carrying out its plan; if OSHA determines that the state has failed to "comply substantially with any provision of the State plan (or assurance contained therein)," OSHA may withdraw its approval. Id. at ¶ 13 (quoting 29 U.S.C. § 667(f)).

North Carolina operates an OSHA-approved State plan. Id. at ¶ 14. Defendants administer North Carolina's State plan. Id. at ¶ 1.

Plaintiff alleges that Defendants are administering the North Carolina State plan in violation of the OSH Act. Id. Specifically, the OSH Act prohibits "us[ing] the results of enforcement activities, such as the number of citations issued or penalties assessed, to evaluate employees directly involved in" enforcing occupational safety and health standards and also prohibits "impos[ing] quotas or goals with regard to the results of such activities." Id. at ¶ 2 (quoting 29 U.S.C. § 657(h)). Plaintiff contends that the job performance of NC OSHA compliance officers is evaluated based on, among other things, "the number of inspections opened and closed, and the number of citations issued

and upheld" – an incentivization policy or practice that "directly violates and is preempted by § 657(h)." Id. at ¶ 2.

## B. Allegations Regarding the Citations

In September 2020, Plaintiff provided laminating services at the Evergreen Packaging paper mill facility in Canton, North Carolina. Id. at ¶ 29.

On September 21, 2020, NC OSHA received a report of work-related fatalities at the facility and "opened inspections of Evergreen Packaging, LLC…and [Plaintiff] related to that incident." Id. at ¶ 30.[1]

Plaintiff contends that on March 16, 2021, "under its improper program for incentivizing inspectors to issue citations," NC OSHA issued thirteen "citation items" to Plaintiff related to the September 21, 2020 incident, including six that were related to a single-entry permit. Id. at ¶ 33.

Plaintiff asserts that without this Court's intervention, NC OSHA will continue its improper enforcement activities, specifically, its practice of "illegally incentivizing" its compliance officers to issue citations. Id. at ¶ 34.

## C. Plaintiff's Claims

The Complaint asserts the following claims:

1. For a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants' official policy or practice of evaluating compliance officers' performance based on the number of citations issued or penalties assessed violates § 657(h) of the OSH Act and "has placed Defendants'

---

[1] In their Answer, Defendants state that two fatalities occurred. Doc. 12 at ¶¶ 2-3.

administration of the North Carolina State Plan out of compliance with the stated terms of the Plan itself";

2. For a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants' policy or practice of evaluating compliance officers' performance based on the number of citations issued or penalties assessed is preempted by § 657(h) of the OSH Act; and

3. A claim pursuant to 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment.

Plaintiff also seeks a preliminary and permanent injunction prohibiting Defendants from engaging in enforcement activities against Plaintiff or other employers who have been inspected or received citations in violation of § 657(h).

## III. Legal Standards

Defendants have moved to dismiss all of Plaintiff's claims, arguing that this Court lacks federal subject matter jurisdiction, that Plaintiff's claims are barred by sovereign immunity, and that Plaintiff has failed to its exhaust administrative remedies. Additionally, Defendants contend that Plaintiff has failed to state a claim and failed to join a necessary party.[2]

### A. Rule 12(b)(1)

A motion to dismiss made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure addresses whether the court has subject-matter jurisdiction to hear the dispute. See Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is

---

[2] Defendants have styled their Motion as containing seven separate motions to dismiss and a related motion for judgment on the pleadings.

a threshold question that relates to the power of the court to hear a case and must be resolved before a court addresses the merits of a case." <u>Cap. Associated Indus., Inc. v. Cooper</u>, 129 F. Supp. 3d 281, 299 (M.D.N.C. 2015) (citing <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 479-80 (4th Cir. 2005). Here, Plaintiff bears the burden of proving that subject matter jurisdiction exists. <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982).

### B. Rule 12(b)(6)

When considering a motion made pursuant to Rule 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. <u>See</u> <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 253 (4th Cir. 2009); <u>Francis v. Giacomelli</u>, 588 F.3d 186, 192 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." <u>Consumeraffairs.com</u>, 591 F.3d at 255; <u>see</u> <u>Giacomelli</u>, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>see</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v.</u>

*Iqbal*, 556 U.S. 662, 678 (2009); <u>accord</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. <u>Twombly</u>, 550 U.S. at 570; <u>Consumeraffairs.com</u>, 591 F.3d at 256.

### C. Rule 12(b)(7)

A motion to dismiss pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure addresses the failure to join a required party. <u>Marina One, Inc. v. Jones</u>, 22 F. Supp. 3d 604, 607 (E.D. Va. 2014). Dismissals under Rule 12(b)(7) are disfavored. <u>Owens-Illinois, Inc. v. Meade</u>, 186 F.3d 435, 441 (4th Cir. 1999); <u>see also</u> <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc.</u>, 210 F.3d 246, 250 (4th Cir. 2000) ("Dismissal of a case [for nonjoinder] is a drastic remedy ... which should be employed only sparingly") (quoting <u>Teamsters Local Union No. 171 v. Keal Driveway Co.</u>, 173 F.3d 915, 918 (4th Cir. 1999)).

### D. Judgment on the Pleadings

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed--but early enough not to delay trial." A motion brought pursuant to Rule 12(c) is analyzed "under the same standards as a motion to dismiss under Rule 12(b)(6)." <u>Occupy Columbia v. Haley</u>, 738 F.3d 107, 115 (4th Cir. 2013); <u>see also</u> <u>Drager</u>

v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999)).

## IV. Discussion

### A. Lack of Subject Matter Jurisdiction

Plaintiff asserts that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331. Doc. 1 at ¶ 4.[3]

The Declaratory Judgment Act permits a court to "declare the rights and other legal relations of any interested party seeking such declaration" when there is "a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201. However, while the Declaratory Judgment Act provides a remedy, it does not create a basis for jurisdiction. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950); Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004).

"[A] federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or

---

[3] During the hearing, Plaintiff asserted that diversity jurisdiction pursuant to 28 U.S.C. § 1332 also exists. The Complaint, however, does not allege an amount in controversy.

diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." <u>Volvo Const.</u>, 386 F.3d at 592 (citations omitted).

Here, Defendants focus on the second part of this test, and argue that Plaintiff has failed to allege a federal question.

However, Plaintiff seeks declaratory and injunctive relief on the ground that Defendants' enforcement activities against it are improper and are preempted by or are in violation of federal law. Such an action presents a federal question. <u>See</u> <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 96, n. 14, 103 S.Ct. 2890, 2899, 77 L.Ed2d 490 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve"); <u>H&R Block Eastern Enterprises, Inc v. Raskin</u>, 591 F.3d 718, 721 n. 5 (4th Cir. 2010) ("Because Block sought, inter alia, injunctive relief on the basis of preemption, its Complaint presents a federal question which the federal courts have jurisdiction to resolve") (citing <u>Verizon Maryland Inc. v. Public Service Commission of Maryland</u>, 535 U.S. 635, 642, 122 S.Ct. 1753, 1758, 152 L.Ed.2d 871 (2002)); <u>see also</u> <u>AES Sparrows Point LNG, LLC</u>, 470 F.Supp.2d 586, 593 (D. Md. 2007) ("the Complaint seeks both declaratory and injunctive relief on

grounds of preemption. This type of action is sufficient to support federal question jurisdiction….").

### B. Eleventh Amendment and Sovereign Immunity

Defendants move to dismiss all of Plaintiff's claims based on sovereign immunity, arguing that "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" Doc. 13-1 at 5 (quoting Ford Motor Co. v. Dep't of Treasury of Ind., 323 U.S. 459, 464 (1945)).

In response, Plaintiff contends that the exception set forth in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) applies. Specifically, Plaintiff argues that its Complaint "by design" satisfies the Ex Parte Young doctrine which allows a suit against an individual state agent in his official capacity that seeks declaratory and prospective injunctive relief. Doc. 14 at 5 (citing Saltz v. Tenn. Dep't of Emp't. Sec., 976 F.2d 966, 969 (5th Cir. 1992)).

Here, Plaintiff has brought suit against Defendants in their official capacities as agents of the state. Further, Plaintiff seeks declaratory and injunctive relief as to future actions NC OSHA may take against Plaintiff. For these reasons, the undersigned agrees that Plaintiff's suit falls within the parameters of Ex Parte Young and that sovereign immunity does not bar Plaintiff's claims. See Verizon Maryland, 535 U.S. at 645, 122 S.Ct. at 1760, 152 L.Ed.2d 871 (2002) ("Here Verizon sought injunctive and declaratory relief,

alleging that the Commission's order requiring payment of reciprocal compensation was pre-empted by the 1996 Act and an FCC ruling. The prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our 'straightforward inquiry.' We have approved injunction suits against state regulatory commissioners in like contexts"); Garner v. Steger, 69 F.Supp.3d 581, 587 (W.D. Va. 2014) ("Specifically, *Ex parte Young* [sic] allows official capacity claims under Section 1983 to be asserted against state officials where a plaintiff seeks only prospective, injunctive relief").

### C. Failure to Exhaust Exclusive Administrative Remedies

It is well-settled that § 1983 claims do not require exhaustion. Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 500 (1982) ("[W]e have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies"). The question presented, then, is whether administrative exhaustion should be required with respect to Plaintiff's other claims.

The doctrine of administrative exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." 4 Admin. L. & Prac. § 12:21 (3d ed.). "[W]here Congress has not clearly required exhaustion, sound judicial discretion governs." McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992), *superseded on other*

*grounds by statute*, 42 U.S.C. § 1997e(a); see also Grimm v. Gloucester County School Board, 972 F.3d 586, 606 (4th Cir. 2020) ("Facing Congressional silence, rather than an express exhaustion provision, 'sound judicial discretion governs'") (quoting McCarthy, 503 U.S. at 144); Probst v. Saul, 980 F.3d 1015, 1020 (4th Cir. 2020) ("when neither a statute nor a regulation speaks to exhaustion in the relevant context, the decision of whether to impose such a requirement is left to 'sound judicial discretion'"). During the hearing, the parties agreed that the decision of whether to require administrative exhaustion in this case is a matter of judicial discretion and that exhaustion is not required by any specific statute.

In determining whether plaintiffs should be required to exhaust their administrative remedies before proceeding in litigation, courts consider if the administrative process will result in an indefinite or unreasonable delay, whether an administrative agency is empowered to grant the relief sought, and whether the administrative agency has particular expertise. See e.g., Cooke v. U.S. Bureau of Prisons, 926 F.Supp.2d 720, 733-34 (E.D.N.C. 2013) (citations omitted).

Here, Plaintiff has filed an administrative proceeding contesting the citations with the North Carolina Occupational Safety and Health Review Commission (the "Commission"). See also Doc. 13-1 at 20 ("Plaintiff has initiated the administrative review process provided by state statute for review

12

of the citations issued but has not yet completed that process"); Doc. 14 at 6. Defendants argue that Plaintiff should be required to complete that proceeding before moving forward in federal court.

Defendants also contend that Plaintiff has other administrative remedies available to it but that it has failed to pursue them. Specifically, with respect to Plaintiff's allegations that the North Carolina State plan is being operated in violation of federal law, Defendants assert that the proper course of action is for Plaintiff to file a complaint about the administration of the State plan pursuant 29 C.F.R. § 1954.20(a), which Plaintiff has not done.[4]

During the hearing, both Plaintiff and Defendants agreed that the administrative proceeding before the Commission could continue for an extended period of time. Plaintiff further advised that, in the administrative proceeding, it has asserted its argument that Defendants' practice of evaluating compliance officers' performance based on the number of citations they issue or penalties they assess violates federal law. However, Plaintiff contended that even if it is successful with respect to that argument, its success would result only in dismissal of the pending citations (and not prospective relief). Defendants provided no authority to contradict Plaintiff's argument in

_____

[4] 29 C.F.R. § 1954.20 is entitled "Complaint about State program administration," and the parties refer to this procedure by the acronym, "CASPA." See Doc. 13-1 at 21; Doc. 14 at 15.

that regard. With respect to a CASPA proceeding, Plaintiff pointed out that the regulations appear to make such a proceeding optional.

Finally, on December 22, 2021, Defendants filed a copy of an order entered in the administrative proceeding on December 15, 2021 (the "December 15 Order," Doc. 17). The undersigned has considered this filing as a notice of supplemental authority pursuant to Local Civil Rule 7.1(j) and has allowed Plaintiff to file a surreply addressing the relevancy of the December 15 Order. See Doc. 19.

In the December 15 Order, the hearing examiner found that there were genuine issues of material fact as to whether the North Carolina Commissioner of Labor had violated § 657(h). Doc. 17 at 7. Additionally, the hearing examiner was unconvinced that § 657(h) applied to the State plan. Doc. 17 at 10.

As noted above, there is no requirement for administrative exhaustion with respect to Plaintiff's § 1983 claims, and therefore requiring administrative exhaustion as to Plaintiff's claims for declaratory and injunctive relief could result in piecemeal litigation.

Further, although it appears that the hearing examiner considered Plaintiff's preemption arguments in the December 15 Order, it is not clear that the Commission has any particular expertise with respect to the question of federal preemption. See Probst, 980 F.3d at 1021 (finding, with respect to constitutional challenge, "permitting judicial review in the first instance may

14

be appropriate") (citing <u>Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.</u>, 561 U.S. 477, 491, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010) ("Petitioners' constitutional claims are also outside the [Securities and Exchange] Commission's competence and expertise")).

With respect to a CASPA proceeding, the text of 29 C.F.R. § 1954.20(a), provides that "[a]ny interested person or representative of such person or groups of persons *may* submit a complaint concerning the operation or administration of any aspect of a State plan." Emphasis added. This language suggests that Plaintiff is not required to file a CASPA proceeding in order to raise a challenge to the operation of the North Carolina State plan. Additionally, it is not clear from the text of § 1954.20 that Plaintiff would be allowed to participate directly in a CASPA proceeding if it were to submit a complaint. <u>See</u> 29 C.F.R. § 1954.20(c)(1) ("If upon receipt of the complaint, the Assistant Regional Director determines that there are reasonable grounds to believe that an investigation should be made, he shall cause such investigation…to be made as soon as practicable").

Under these circumstances, the undersigned is not persuaded that Plaintiff should be required to exhaust its administrative remedies before proceeding with its federal claims.

### D. Failure to State a § 1983 Claim

Defendants move to dismiss Plaintiff's procedural due process claim under § 1983 for failure to state a claim.[5]

"[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (emphasis in original) (quoting Parratt v. Taylor, 451 U.S. 527, 537, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981)). To state a claim for a procedural due process violation, a plaintiff "must show '(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate.'" Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011) (citation omitted).

Here, for purposes of their current arguments, Defendants assume that a liberty or property interest exists.

---

[5] The body of Plaintiff's Complaint references a single due process claim, but the prayer for relief seeks a declaration that Defendants have violated Plaintiff's procedural and substantive due process rights. Doc. 1 at 20-21. During the hearing, Plaintiff's counsel asserted that Defendants had not moved to dismiss Plaintiff's substantive due process claim, and Defendants did not contradict that assertion.

16

With respect to the second prong, although Defendants assert, in conclusory fashion, that no deprivation has occurred, they do not develop this argument.

Rather, Defendants focus primarily on the third prong, and argue that Plaintiff's procedural due process claim fails because the procedures employed by Defendants are constitutionally adequate. Specifically, Defendants assert that post-deprivation remedies are available to Plaintiff. Doc. 13-1 at 18 (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984)).

"Although the Due Process Clause generally requires notice and an opportunity to be heard *before* the government seizes one's property...the Supreme Court 'has rejected the proposition that ... the State [must always] provide a hearing prior to the initial deprivation of property.'" Reams v. Irvin, 561 F.3d 1258, 1263 (11th Cir. 2009) (emphasis in original) (internal citation omitted) (quoting Parratt, 451 U.S. at 540–41, 101 S.Ct. at 1915–16)). For example, in Parratt, the Supreme Court held that due process did not require a pre-deprivation hearing where holding such a hearing would be impracticable. Id; see also Hudson v. Palmer, 468 U.S. 517, 533 (1984).

"The Parratt-Hudson doctrine, however, does not apply to deprivations that are a 'result of some established state procedure.'" Hogan v. Cherokee County, 519 F.Supp.3d 263, 279 (W.D.N.C. 2021) (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36, 102 S.Ct. 1148, 71 L.Ed.2d 265

17

(1982)); see also National Ass'n of Boards of Pharmacy v. Board of Regents of the University System of Georgia, 633 F.3d 1297, 1317 (11th Cir. 2011) (citing city building inspection process as an example of an established state procedure).

In this matter, Plaintiff has alleged that Defendants violated its due process rights "pursuant to an official policy or practice that violates and is preempted by federal law." Doc. 1 at ¶ 55.[6] Defendants have not argued that the alleged "incentivization" policy is not an "official policy or practice" of the state.

Therefore, on the current record, the undersigned is not persuaded that Defendants have established that the existence of a post-deprivation remedy precludes Plaintiff's procedural due process claim.

### E. Failure to State a Preemption Claim

During the hearing, Defendants argued that § 657(h) is a recordkeeping provision that does not apply to State plans. In response, Plaintiff argued that once final approval of a State plan is obtained, federal occupational and health standards no longer apply, but that § 657(h) continues to be applicable. In sum, the parties disagree about the effect that 29 U.S.C. § 667, the federal provision

---

[6] Plaintiff's Complaint includes numerous paragraphs alleging that the Commissioner has repeatedly admitted, in various administrative proceedings, to incentivizing the issuance of citations. See Doc. 1 at ¶¶ 21-28.

18

addressing "state jurisdiction and plans," has on § 657(h). See 29 U.S.C. § 667(e) (following final approval of a State plan, "the provisions of sections…657 (except for the purpose of carrying out subsection (f) of this section)…and standards promulgated under section 655 of this title, shall not apply with respect to any occupational safety or health issues covered under the plan….").

In the context of a claim for declaratory relief, a motion to dismiss is generally not the appropriate means by which to establish substantively whether a plaintiff should prevail on its claim. See Atlantic Coast Pipeline v. Nelson Co. Board of Supervisors, Case No. 3:18-cv-00115, 2019 WL 2570530, at *6 (W.D. Va. June 21, 2019) ("Generally, 'when a case presents a pure question of law as to federal preemption, the case should be resolved at the summary judgment stage'") (citing Dominion Transmission, Inc. v. Town of Myersville Town Council, 982 F.Supp.2d 570, 576 (D. Md. 2013)).

Here, the parties' arguments regarding the interaction between 29 U.S.C. §§ 657(h) and 667 go to the merits of Plaintiff's claims, rather than to the sufficiency of Plaintiff's allegations. See Pruitt v. Alba Law Group, P.A., No. DKC 15–0458, 2015 WL 5032014, at *8 (D. Md. Aug. 24, 2015) ("The test of the sufficiency of the bill is not whether it shows that the plaintiff is entitled to the declaration of rights or interest in accordance with his theory, but whether he is entitled to a declaration at all; so, even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy

19

which should be settled, he states a cause of suit for a declaratory decree")
(quoting <u>Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.</u>, No. DKC 09–0100,
2011 WL 856374, at *18 (D.Md. Mar.9, 2011)); <u>see also</u> 22A Am.Jur.2d
Declaratory Judgments § 228 (2015 supp.) ("A motion to dismiss is seldom an
appropriate pleading in actions for declaratory judgments, and such motions
will not be allowed simply because the plaintiff may not be able to prevail").[7]

Accordingly, the undersigned concludes that Plaintiff's preemption
claims should be allowed to proceed.[8]

### F. Failure to State a Claim for Preliminary Injunction

Plaintiff's Complaint includes, in the prayer for relief, a request for a
preliminary injunction. In their Motion, Defendants argue that a preliminary
injunction would be improper here. Plaintiff responds that it has yet to file a

---

[7] As stated above, it appears that in the December 15 Order, the hearing examiner rejected Plaintiff's arguments regarding the applicability of § 657(f) to the State plan. <u>See</u> Doc. 17. Plaintiff argues correctly, though, that the hearing examiner's determination is not binding on this Court. <u>See</u> Doc. 19.

[8] Under some circumstances a federal court may "construe a motion to dismiss as a motion for a declaration in favor of the non-moving party." <u>See</u> <u>Diamond v. Chase Bank</u>, No. DKC 11–0907, 2011 WL 3667282 at *5 (D. Md. Aug. 19, 2011) (citing <u>McKinsey & Co., Inc. v. Olympia & York 245 Park Ave. Co.</u>, 79 A.D.2d 557, 433 N.Y.S.2d 802, 802 (N.Y.App.Div.1980)). The undersigned does not recommend doing so here on the current record. Allowing this matter to proceed into discovery would provide the parties and the court with the opportunity to consider the legal arguments on a more complete record, and would allow factual issues to be explored, including whether and to what extent an incentivization policy exists as Plaintiff alleges. <u>See</u> Doc. 17 (December 15 Order wherein the hearing examiner found that genuine issues of material fact existed with respect to whether an incentivization scheme was in place, such that summary judgment was inappropriate).

motion for a preliminary injunction, and therefore that Defendants' arguments are premature. The undersigned agrees.

### G. Failure to Join a Necessary Party

Defendants argue that the United States Department of Labor ("USDOL") is a necessary and indispensable party, and that Plaintiff's failure to name the USDOL as a party necessitates the dismissal of this matter. Doc. 13-1 at 23-25.

Rule 12(b)(7) motions involve a two-step inquiry. In the first step, the court must determine whether an absent party is necessary under Rule 19(a) because of its relationship to the matter. Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999). If the absent party is necessary, it must be joined provided that joinder does not destroy the court's jurisdiction. Id. In the second step, when a necessary party cannot be joined because it would destroy the court's jurisdiction, the court must decide whether the action can continue without the party, or whether the party is indispensable under Rule 19(b) such that the action must be dismissed. Id. When determining whether a necessary party that cannot be joined is indispensable, courts consider a number of factors including the possible prejudice to all parties, the adequacy of a judgment, and the adequacy of remedies. Fed. R. Civ. P. 19(b). Defendants acknowledge that they have the burden of establishing that the USDOL is both necessary and indispensable. Doc. 13-1 at 24.

21

Given the relief requested in Plaintiff's Complaint, specifically Plaintiff's request for a declaration that Defendants' alleged incentivization policy is improper, the undersigned is not persuaded that Defendants have met their burden of proving that the USDOL is a necessary party. Further, even if the USDOL were found to be a necessary party, Defendants have cited no authority supporting their assertion that the USDOL is an indispensable party. Lastly, even assuming that the USDOL is both necessary and indispensable, Defendants have not explained why the addition of the USDOL as a party would require dismissal of this matter.

### H. Motion for Judgment on the Pleadings

Defendants move for Judgment on the Pleadings based upon sovereign immunity and Plaintiff's failure to exhaust administrative remedies "to the extent that the Answer filed by Defendants further clarifies the bases for Defendants' motions to dismiss." Doc. 13-1 at 27-28.

The undersigned has considered Defendants' Answer and finds that it does not change the analysis set forth above.

## V. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Defendants' "Motions to Dismiss and for Judgment on the Pleadings" (Doc. 13) be **DENIED**.

Signed: January 7, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).