IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00090-MR-WCM

| | |
|---|---|
| INDUSTRIAL SERVICES GROUP, INC., d/b/a UNIVERSAL BLASTCO, <br><br>Plaintiff, <br><br>v. <br><br>JOSH DOBSON, *in his official capacity as North Carolina Commissioner of Labor*, and JENNIFER HAIGWOOD, *in her official Capacity as Director of the Occupational Safety and Health Division of the North Carolina Department of Labor,* <br><br>Defendants. | MEMORANDUM AND RECOMMENDATION |

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Standing (the "Motion to Dismiss," Doc. 51).

I. Procedural Background

On March 31, 2021, Industrial Services, d/b/a Universal Blastco ("Plaintiff") filed its Complaint against Josh Dobson ("Dobson"), who is the North Carolina Commissioner of Labor, and Kevin Beauregard ("Beauregard"), who was then the Director of the Occupational Safety and Health Division of the North Carolina Department of Labor ("NC OSHA"). Doc 1 at ¶¶ 8, 9.

1

On June 4, 2021, Dobson and Beauregard filed an Answer as well as a motion for judgment on the pleadings, arguing, among other things, that they were entitled to sovereign immunity. Doc. 13.[1]

A hearing on the motion for judgment on the pleadings was conducted on December 9, 2021. On March 29, 2022, the motion was denied. Doc. 23.

On April 28, 2022, Dobson and Beauregard filed a Notice of Appeal. Doc. 25. Because that appeal raised the question of sovereign immunity, this matter was stayed pending completion of the appeal. Doc. 44.

On May 16, 2023, the Fourth Circuit Court of Appeals affirmed the denial of the motion for judgment on the pleadings. Docs. 45, 48.

On May 30, 2023, Jennifer Haigwood ("Haigwood") was substituted in the place of Beauregard.

On June 15, 2023, Dobson and Haigwood ("Defendants") filed the Motion to Dismiss which challenges Plaintiff's standing. Doc. 51. Plaintiff has responded, and Defendants have replied. Docs. 53, 57. A hearing on the Motion to Dismiss was conducted on October 18, 2023.

---

[1] Dobson and Beauregard attached multiple exhibits to the Answer and cite to some of those exhibits in support of the Motion to Dismiss.

2

## II. Plaintiff's Allegations

Plaintiff's Complaint alleges as follows:

### A. OSHA and the North Carolina State Plan

The federal Occupational Safety and Health Act of 1970 ("OSH Act") created a regulatory scheme for ensuring safe and healthy working conditions. The OSH Act created the federal Occupational Safety and Health Administration ("OSHA") to administer and enforce the OSH Act. Doc. 1 at ¶ 10.

The OSH Act "encourage[ed] the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws." Id. at ¶ 11 (quoting 29 U.S.C. § 651(b)(11)). To that end, a State may develop a "State plan" and submit it to OSHA for approval. Id. at ¶ 11. A "State plan" must provide standards that are "at least as effective in providing safe and healthful employment" as OSHA's standards, as well as "a program for the enforcement of the State standards which is, or will be, at least as effective as that provided in the Act…." Id. at ¶¶ 11 & 12 (quoting 29 U.S.C. § 667(c)(2); 29 C.F.R. § 1902.3(d)(1)).

Once OSHA approves a "State plan," it continues to evaluate the manner in which the State is carrying out its plan; if OSHA determines that the State has failed to "comply substantially with any provision of the State plan (or

3

assurance contained therein)," OSHA may withdraw its approval of the State plan. Id. at ¶ 13 (quoting 29 U.S.C. § 667(f)).

North Carolina operates an OSHA-approved State plan. Id. at ¶ 14.

Plaintiff alleges that Defendants are administering the North Carolina State plan in violation of the OSH Act. Id. Specifically, the OSH Act prohibits "us[ing] the results of enforcement activities, such as the number of citations issued or penalties assessed, to evaluate employees directly involved in" enforcing occupational safety and health standards and also prohibits "impos[ing] quotas or goals with regard to the results of such activities." Id. at ¶ 2 (quoting 29 U.S.C. § 657(h)). Plaintiff contends that the job performance of NC OSHA compliance officers is evaluated based on, among other things, "the number of inspections opened and closed, and the number of citations issued and upheld" – an incentivization policy or practice (the "Incentive Policy") that "directly violates and is preempted by § 657(h)." Id. at ¶ 2.

### B. The Citations

In September 2020, Plaintiff provided laminating services at the Evergreen Packaging paper mill facility in Canton, North Carolina. Id. at ¶ 29.

On September 21, 2020, NC OSHA received a report of work-related fatalities at the facility and "opened inspections of Evergreen Packaging, LLC…and [Plaintiff] related to that incident." Id. at ¶ 30.[2]

Plaintiff contends that on March 16, 2021, NC OSHA issued thirteen "citation items" to Plaintiff related to the September 21, 2020 incident (the "Citations"), including six that were related to a single-entry permit, id. at ¶ 33, and that without this Court's intervention, NC OSHA will continue its illegal Incentive Policy. Id. at ¶ 34.

### C. Plaintiff's Claims

The Complaint seeks:

1. A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants' Incentive Policy violates § 657(h) of the OSH Act and "has placed Defendants' administration of the North Carolina State Plan out of compliance with the stated terms of the Plan itself";

2. A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants' Incentive Policy is preempted by § 657(h) of the OSH Act; and

3. Relief pursuant to 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment.

Plaintiff also seeks preliminary and permanent injunctive relief prohibiting Defendants from engaging in enforcement activities against Plaintiff or other employers who have been inspected or received citations in violation of § 657(h).

---

[2] In their Answer, Defendants state that two fatalities occurred. Doc. 12 at ¶¶ 2-3.

## III. Legal Standard

A motion to dismiss made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure addresses whether the court has subject-matter jurisdiction to hear the dispute. See Fed. R. Civ. P. 12(b)(1). "[T]he party asserting jurisdiction has the burden of proving subject matter jurisdiction." Balzer & Assoc. Inc. v. Union Bank & Trust, 3:09cv273, 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009).

Standing is a "necessary component of subject matter jurisdiction" because a court must be able to redress or prevent an injury when it resolves a case or controversy. Fed. Trade Comm'n v. Ross, 74 F.4th 186, 191 (4th Cir. 2023); see also Pye v. United States, 269 F.3d 459, 466 (4th Cir. 2001) ("Standing is a threshold jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers under the Constitution of the United States") (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998)). "The core goal of the standing inquiry is to ensure that a plaintiff bringing an action has enough of a stake in the case to litigate it properly." Pye, 269 F.3d at 466.

When a plaintiff's standing is challenged, "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Wikimedia Found. v. Nat'l Sec.

Agency, 857 F.3d 193, 208 (4th Cir. 2017) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

Here, the undersigned reads the Motion to Dismiss as being a facial challenge to Plaintiff's standing.[3]

## IV. Discussion

Article III standing consists of three elements: the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Fed. Trade Comm'n v. Ross, 74 F.4th 186, 192 (4th Cir. 2023) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

Defendants contend that Plaintiff does not meet any of these elements.

---

[3] In a facial challenge, "the defendant contends that the complaint fails to allege facts upon which standing can be based and the plaintiff is afforded the same procedural protection that exists on a motion to dismiss." Wikimedia Found., 857 F.3d at 208 (internal quotation omitted); see also Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982) (noting that court may either apply a standard similar to that applied to a Rule 12(b)(6) motion, accepting the allegations of the complaint as true, or may hold an evidentiary hearing). In their reply, Defendants argue that they have also made a factual challenge to Plaintiff's standing, "because Defendants contend the federal law at issue…does not apply to them…." Doc. 57 at 2; see also Doc. 57 at 4-5 (Plaintiff's argument regarding the applicability of § 657(h)). However, the undersigned is not persuaded that Defendants' argument regarding the applicability of § 657(h) raises a factual challenge.

### A. Injury in Fact

To show an injury in fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" United States v. Under Seal, No. 21-7273, 2023 WL 4146234, at *1 (4th Cir. June 23, 2023) (quoting Spokeo, 578 U.S. at 339).

While "traditional tangible harms, such as physical harms and monetary harms" "readily qualify as concrete injuries under Article III," "[v]arious intangible harms," including reputational harm, "can also be concrete." TransUnion LLC v. Ramirez, ––– U.S. –––, 141 S.Ct. 2190, 2204 (2021)); see also Spokeo, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Additionally, a plaintiff seeking injunctive relief must establish an "ongoing or future injury in fact." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018) (citing O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974)). A plaintiff can "'satisfy the injury-in-fact requirement for prospective relief' either by demonstrating 'a sufficiently imminent injury in fact' or by demonstrating 'an ongoing injury.'" Garey v. Farrin, 35 F.4th 917, 922 (4th Cir. 2023) (quoting Deal v. Mercer Cnty. Bd. of Educ., 911 F.3d 183, 189 (4th Cir. 2018)). "The risk of a future injury must be substantial, not just conceivable." John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ., 79 F.4th 622, 629 (4th Cir. 2023).

Here, Defendants argue that Plaintiff cannot establish an injury-in-fact because (1) there will be no "concrete injury" if the Citations are upheld "in the proper state court venue;"[4] (2) there is not a sufficiently particularized or direct injury because Plaintiff is alleging that "every employer subject to an OSH inspection has been or will be injured" by the purportedly illegal Incentive Policy; and (3) Plaintiff's alleged injury – which will only occur if Plaintiff is inspected again and receives citations – is too speculative.

In response, Plaintiff argues that the "injury in fact" is the "ongoing unlawful prosecution" by the Commission. Doc. 53 at 1; see also Doc. 53 at 9 ("NC OSHA continues to prosecute the citations it issued against Plaintiff despite its lack of authority to do so."). During the October 18 hearing, Plaintiff similarly argued that the issuance of the Citations, and the cost associated with defending the Citations, was an injury in fact. However, Plaintiff also argued during the hearing that its injury was one based on lost business opportunities due to the number of citations it was issued. Specifically, Plaintiff asserted that it has lost approximately $100 million in potential revenue due to the Citations. In that regard, Plaintiff contended that the

---

[4] Plaintiff has also challenged the Citations in a proceeding before the North Carolina Occupational Safety and Health Review Commission (the "Commission"). See Doc. 20 at 12 ; Doc. 13-1 at 20. During the October 18 hearing, defense counsel confirmed that the Commission is the "state court venue" to which Defendants refer, and that the proceeding is active and scheduled for a "prehearing discussion" in January of 2024. Counsel could not advise as to when the proceeding would be complete.

9

Case 1:21-cv-00090-MR-WCM   Document 63   Filed 12/08/23   Page 9 of 16

Incentive Policy results in a much higher number of citations being issued in situations in which "one or two citations" may be warranted, and that this higher number of citations, in turn, results in potential vendors deciding not work with Plaintiff.

The undersigned is persuaded that, at least at this stage of this matter, Plaintiff has alleged a sufficient injury in fact based on the issuance and continued prosecution of the Citations. The Complaint, though, does not include allegations regarding Plaintiff's lost business opportunities.[5] See e.g., So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

### B. Causation

"Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." Ramirez, 131 S. Ct. at 2205 (quoting Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 338 (7th Cir. 2019)). "[T]here must be a causal connection between the injury and the conduct complained of — the injury has to be 'fairly ... trace[able] to the challenged action of the

---

[5] The closest Plaintiff comes to make an allegation regarding lost business opportunities is contained within Plaintiff's § 1983 claim. Doc. 1 at ¶ 52 ("The right to conduct business and earn a profit is a property interest protected by the Due Process Clause").

10

defendant, and not ... the result [of] the independent action of some third party not before the court.'" Lujan, 504 U.S. at 560.

The Fourth Circuit has explained that "[i]mposition of the stringent proximate cause standard, derived from principles of tort law, has been held to 'wrongly equate injury fairly traceable to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 315–16 (4th Cir. 2013) (quoting Bennett v. Spear, 520 U.S. 154, 168–69 (1997)) (internal alterations omitted). "Accordingly, the relevant inquiry to determine traceability is simply whether the Defendants' alleged actions are 'at least in part responsible for' Plaintiffs' injuries." Maddonna v. United States Department of Health and Human Services, 567 F.Supp.3d 688, 709 (D.S.C. 2020) (quoting Libertarian Party, 718 F.3d at 316).

Here, Defendants argue that Plaintiff has "failed to allege a sufficient causal connection between any purported injury and the claimed violation of federal law" because the "triggering event" for the issuance of the Citations was the fire at the facility "and not the desire of an inspector to get a good performance review." Doc. 51-1 at 9; see also Doc. 51-1 at 15 ("The inspection was actually triggered by a federal OSH standard, 29 CFR § 1904.39, which requires the reporting of fatalities within 8 hours.").

In its Complaint, Plaintiff alleges that:

11

> On March 16, 2021, under its improper program for incentivizing inspectors to issue citations, NC OSHA issued thirteen (13) citation items to [Plaintiff], relating to the September 21, 2020 accident. As an example of NC OSHA's improper, goal-orientated focus on issuing citations, approximately six (6) of the citation items relating [sic] to a single entry permit. A true and accurate copy of the citations is attached as Exhibit 9.

> Doc. 1 at ¶ 33.

Plaintiff has not alleged, though, that the Citations were issued because of the Incentive Policy, or that the Citations were not based on separate (and independently viable) violations of safety and health standards.[6]

Further, while Plaintiff has challenged all of the Citations before the Commission, during the October 18 hearing, Plaintiff acknowledged that even without the Incentive Policy, the same Citations could have been issued.

The undersigned recognizes that the pleading standard with respect to causation is not high. See Maddonna, 567 F.Supp.3d at 709. However, even taking Plaintiff's factual allegations as true and reading those allegations in the light most favorable to Plaintiff, see Wikimedia Found., 857 F.3d at 208, the undersigned is not persuaded that Plaintiff has sufficiently alleged that the Citations were issued because of the Incentive Policy.

---

[6] Although Plaintiff alleges that six Citations related to a "single entry permit," a review of the Citations, which Plaintiff has attached to its Complaint, indicates that each Citation was supported by reference to a separate federal standard or regulation. See Doc. 1-10 at 11-17.

## C. Redressability

With respect to redressability, a plaintiff must allege that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc., 528 U.S. 167, 181 (2000).

Defendants argue that, to the extent Plaintiff suggests that "it has been injured by the citations Defendants issued against the company, [Plaintiff's] requested declaratory and injunctive relief would not redress that injury." Doc. 51-1 at 11; see also Doc. 51-1 at 18 ("Either [Plaintiff] is seeking concrete relief in the form of the undoing of the citations issued to it, which the Fourth Circuit determined it has not pled, or [Plaintiff] has speculative injuries based on the *potential* that another inspection could occur and speculation that it would receive citations as a result of such inspection") (emphasis in briefing).

During the hearing, Plaintiff argued that its alleged injuries were redressable by this Court because enjoining Defendants' Incentive Policy would stop the prosecution of the Citations and would also stop the issuance of future citations. See also Doc. 53 at 14 ("Redress by the Court through issuing a declaratory judgment and injunction in favor of Plaintiff would be enforceable against Defendants. It would stop Defendants from continuing to 'engag[e] in enforcement activities against [Plaintiff], including initiating or maintaining administrative proceedings.").

13

Under the specific circumstances presented here, the undersigned is persuaded that Plaintiff has alleged adequately an injury that is redressable. See Stinnie v. Holcomb, 355 F.Supp.3d 514, 525 (W.D. Va. 2018) ("An injury is redressable where a favorable ruling would frustrate the implementation of a challenged statute or action") (citing Cooksey v. Futrell, 721 F.3d 226, 238 (4th Cir. 2013) (finding the redressability requirement was met where a decision favoring the plaintiff "would mean the [defendant] would be enjoined from enforcing" an alleged unconstitutional statute, "and/or [the statute] would be deemed unconstitutional."); Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252, 265 (1991) (finding redressability requirement was satisfied where invalidation of a board's veto power would prevent the enactment of the allegedly harmful plan.)).

## V. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss (Doc. 51) be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE**. See S. Walk at Broadlands, 713 F.3d at 185 ("a dismissal for lack of subject-matter jurisdiction must be without prejudice since the court 'has no power to adjudicate and dispose of a claim on the merits.'").

Signed: December 8, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).